FILED 19 JUN '19 15:40 USDC-ORE

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 6:19-cr- 255 - AA |
| v. | INDICTMENT |
| RICHARD OGDEN, and<br>MICHAEL MANN, | 18 U.S.C. § 1349<br>18 U.S.C. § 1341 |
| Defendants. | Forfeiture Allegation |

## THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.    Defendant RICHARD OGDEN resided in Selma, Oregon, and in Reno, Nevada.

2.    Defendant MICHAEL MANN resided in Selma, Oregon.

3.    Silver Cache Trading Corp. (Silver Cache), incorporated in Oregon in 2002, was a company controlled by defendants RICHARD OGDEN and MICHAEL MANN.  Silver Cache operated primarily from the Selma, Oregon, and Reno, Nevada, residences of defendant RICHARD OGDEN.  Silver Cache offered prospective and established clients various programs through which these clients could purchase gold and silver coins from Silver Cache.

4.    Vault Protective Services, Inc. (VPS), incorporated by defendant MICHAEL MANN in Oregon in 2004, was a company with no actual place of business and it

Indictment                                                                                     Page 1

conducted no business. Defendants RICHARD OGDEN and MICHAEL MANN, as described below, made material misrepresentations about VPS to induce prospective clients to do business with Silver Cache, including buying gold and silver coins from Silver Cache, and to convince established clients of Silver Cache to continue doing business with Silver Cache, including buying gold and silver coins from Silver Cache.

5.     A-Mark Precious Metals, Inc. (A-Mark), located in El Segundo, California, was a legitimate seller of gold and silver coins. Defendants RICHARD OGDEN and MICHAEL MANN caused Silver Cache to buy from A-Mark most of the gold and silver coins Silver Cache supplied to its clients.

6.     Equity River Funding, LLC (Equity River), was a limited liability corporation defendant RICHARD OGDEN incorporated in Wyoming in 2012 and purportedly operated from Reno, Nevada. As described below, defendant RICHARD OGDEN used Equity River as a successor to Silver Cache to facilitate a scheme to defraud clients.

## COUNT ONE

### [18 U.S.C. § 1349 - Conspiracy to Commit Mail Fraud]

Paragraphs 1-5 of the General Allegations are incorporated herein.

### OBJECT OF THE CONSPIRACY

1.     Beginning on or about May 1, 2008 and continuing up to and including December 31, 2014 within the District of Oregon, and elsewhere, defendants RICHARD OGDEN and MICHAEL MANN, and others, known and unknown to the grand jury, unlawfully and knowingly combined, conspired, confederated, and agreed together to devise a material scheme or artifice to defraud, or for obtaining money or property by means of materially false or fraudulent pretenses, representations, or promises, and for the purpose

of executing such scheme or artifice or attempting to do so, to place in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or to deposit or cause to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or to take or receive therefrom, any such matter or thing, or to knowingly cause to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, in violation of Title 18, United States Code, Section 1341.

## MANNER AND MEANS OF THE CONSPIRACY

2.      Defendants RICHARD OGDEN and MICHAEL MANN, and others, known and unknown to the grand jury, carried out their conspiracy using the following manner and means, among others:

a.  The defendants put on seminars at locations throughout the United States to solicit clients for Silver Cache.

b.  At the seminars, the defendants promoted the purchase of gold and silver coins through Silver Cache as a means of safely protecting personal assets and safely increasing personal net worth.

c.  At the seminars and at other times and places, including through the United States mail, the defendants distributed to prospective clients and established clients of Silver Cache written materials promoting the purchase of gold and silver coins through Silver Cache as a means of safely protecting personal assets and safely increasing personal net worth.

**Indictment**                                                                              **Page 3**

d.   The defendants represented to prospective and established clients that if they bought gold and silver coins through Silver Cache, the clients could choose to have Silver Cache ship the coins from Silver Cache to them or to have Silver Cache store the coins on their behalf at Vault Protective Services.

e.   The defendants represented to prospective and established clients that because Silver Cache bought gold and silver coins in bulk Silver Cache paid a discounted amount for the coins it bought.  The defendants further represented that Silver Cache made its profits, and the defendants made their personal profits from Silver Cache, by charging the clients a higher amount for coins than Silver Cache paid, but that Silver Cache charged the clients less for coins than if individual clients bought the same coins for retail prices.

f.   The defendants, in their oral presentations, in their written promotional materials, and in account statements and correspondence mailed to clients, described Vault Protective Services as an insured company independent from Silver Cache, that would, for a monthly fee, store client coins in a highly secure unidentified business location.

g.   Some Silver Cache clients sent their money to Silver Cache so Silver Cache could buy coins on their behalf, then ship the coins to those clients using the United States mail or private interstate carrier.

h.   Some Silver Cache clients, relying on the defendants' false representations about Vault Protective Services, sent money to Silver Cache so Silver Cache could buy coins on their behalf, then store the coins at Vault Protective Services.

i.   Each month, the defendants created and mailed monthly account statements to Silver Cache clients.  For the Silver Cache clients who had directed Silver Cache to store their coins at Vault Protective Services, the account statements identified the coins Silver Cache had purportedly purchased on their behalf that month and had sent to Vault Protective Storage.  These account statements also had a running total of the coins purportedly stored at Vault Protective Services.  These account statements also billed the clients for a monthly storage charge for the coins purportedly stored at Vault Protective Services.  The defendants collected these monthly storage fees from clients in several ways.

j.   The defendants' representations about Vault Protective Services were false.  First, the defendants intentionally failed to disclose to prospective and established clients that they had created Vault Protective Services.  Second, contrary to the defendants' oral and written representations, Vault Protective Services had no physical business location, conducted no business, was not insured, and the defendants sent no coins to Vault Protective Services for storage.

k.   It was further part of the conspiracy that defendant RICHARD OGDEN used for his own personal benefit client funds, including a portion of the money Silver Cache clients sent to Silver Cache to buy coins to be stored at Vault Protective Services.

l.   It was further part of the conspiracy that defendant MICHAEL MANN used for his personal benefit, and for the benefit of his domestic partner, client funds, including a portion of the money Silver Cache clients sent to Silver Cache to buy coins to be stored at Vault Protective Services.

**Indictment**                                                                                  **Page 5**

m.  It was further part of the conspiracy that the defendants used Silver Cache to offer
loans to Silver Cache clients.  One type of collateral for these loans was the coins
Silver Cache was supposedly storing at Vault Protective Services for these clients.

n.  It was further part of the conspiracy that the defendants used Silver Cache or
another entity they created and controlled, Coin Clearinghouse, LLC, to solicit and
obtain loans from Silver Cache clients.  The defendants, through Silver Cache or
Coin Clearinghouse, LLC, falsely represented they would repay these loans with
interest.  Instead, the defendants did not repay these loans.

o.  In December 2014, the defendants sent to clients of Silver Cache a letter stating
Silver Cache was ceasing business operations.  This letter contained several
material false representations that the defendants intended would cause Silver
Cache clients to delay making, or to not make, legal claims against Silver Cache or
them, and to delay informing, or not inform, law enforcement authorities about their
fraudulent operation of Silver Cache.  In this letter, the defendants falsely stated
Silver Cache was ceasing business operations "[d]ue to adverse economic
conditions and the inability of the Company to produce a profit for a number of
years . . ." This letter further stated that "[i]f you believe you have a claim against
the corporation, you are invited to submit a written description of that claim along
with any supporting documents . . ." and falsely stated that "[a]ll claims received
will be subject to evaluation and audit." This letter directed client-claimants to
address their claims to "Silver Cache Trading Corp, Attn: Corporate Receiver . . ."

**Indictment**                                                          **Page 6**

in this way falsely representing to clients a Corporate Receiver was in control of

Silver Cache when, in fact, no such Corporate Receiver existed

In violation of Title18, United States Code, Section 1349.

## COUNT TWO

### [18 U.S.C. Section 1341 – Mail Fraud]

Paragraphs 1-6 of the General Allegations are incorporated herein.

1.    Beginning on or about May 1, 2008 and continuing up to and including June 30,

2017, within the District of Oregon, and elsewhere, defendants RICHARD OGDEN and

MICHAEL MANN devised a material scheme or artifice to defraud, or for obtaining

money or property by means of materially false or fraudulent pretenses, representations,

or promises, and for the purpose of executing such scheme or artifice or attempting to do

so, placed in any post office or authorized depository for mail matter, any matter or thing

whatever to be sent or delivered by the Postal Service, or deposited or caused to be

deposited any matter or thing whatever to be sent or delivered by any private or

commercial interstate carrier, or took or received therefrom, any such matter or thing, or

knowingly caused to be delivered by mail or such carrier according to the direction

thereon, or at the place at which it is directed to be delivered by the person to whom it is

addressed, any such matter or thing.

2.    In furtherance of the material scheme or artifice to defraud, or for obtaining

money or property by means of materially false or fraudulent pretenses, representations,

or promises, defendants RICHARD OGDEN and MICHAEL MANN:

    a.   conducted seminars at which they made false material misrepresentations and material omissions about Vault Protective Services and that Silver Cache would use all client funds to buy gold and silver coins;

    b.   mailed monthly statements to established clients of Silver Cache that contained false material statements about that month's purchase of coins, that those coins were stored at Vault Protective Services, and a running total of coins purportedly stored at Vault Protective Services;

    c.   in December 2014, mailed to clients of Silver Cache a letter falsely stating Silver Cache was ceasing business operations "[d]ue to adverse economic conditions and the inability of the Company to produce a profit for a number of years . . ." This letter further stated that "[i]f you believe you have a claim against the corporation, you are invited to submit a written description of that claim along with any supporting documents . . ." and falsely stated that "[a]ll claims received will be subject to evaluation and audit." This letter directed client-claimants to address their claims to "Silver Cache Trading Corp, Attn: Corporate Receiver . . ." in this way falsely representing to clients a Corporate Receiver was in control of Silver Cache when, in fact, no such Corporate Receiver existed.

3.    In or about December 2014, defendant MICHAEL MANN ceased his participation in the material scheme or artifice to defraud, or for obtaining money or property by means of materially false or fraudulent pretenses, representations, or promises, but defendant RICHARD OGDEN continued his participation.

Indictment                                                      Page 8

4.    After in or about December 2014, and in furtherance of the material scheme or artifice to defraud, or for obtaining money or property by means of materially false or fraudulent pretenses, representations, or promises, defendant RICHARD OGDEN:

a.    mailed written statements ("lulling statements") to former Silver Cache clients designed to forestall those clients from taking legal action against him and against Silver Cache and to forestall those clients from informing law enforcement authorities about Silver Cache's fraudulent operation.  These lulling statements, (including a statement titled "CS Corp Client Advisory") contained material false statements about the reasons Silver Cache ceased operations, about how client losses would be minimized, about how former Silver Cache clients could make claims against Silver Cache, and about how these claims would be processed,

b.    used Equity River Funding as a successor to Silver Cache but continued to use the name Silver Cache as a d/b/a for Equity River Funding, and falsely represented that Silver Cache and Equity River Funding had different ownership and management when, in fact, defendant OGDEN operated and controlled both companies;

c.    used Equity River Fund d/b/a Silver Cache to solicit prospective and established clients to purchase gold and silver coins;

d.    falsely represented to prospective and established clients that clients could purchase coins and, for a fee, have those coins safely stored at Vault Protective Services;

**Indictment**                                                                                      **Page 9**

e.   used client funds for his personal benefit rather than using those funds to purchase coins for clients and storing the coins at Vault Protective Services, as he had represented to clients;

f.   created and mailed to clients of Equity River Funding d/b/a Silver Cache monthly statements falsely showing the clients had coins stored at Vault Protective Services and charging the clients a fee for coin storage.

In violation of Title 18, United States Code, Section 1341.

## FORFEITURE ALLEGATION

1.       Upon conviction of either offense in Count 1 or 2, defendants **RICHARD OGDEN** and **MICHAEL MANN** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting or derived from proceeds traceable to the commission of said violations, including but not limited to a money judgment for a sum of money equal to the amount of forfeitable property.

2.       If any of the above-described forfeitable property, as a result of any act or omission of the defendants **OGDEN** or **MANN**:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

/ / /

/ / /

**Indictment**                                                                                          **Page 10**

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C.

§ 2461(c), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described in these forfeiture allegations.


Dated: June 19, 2019                                              A TRUE BILL.

                                                                  ████████████████████████

                                                                  ████████████████████████

                                                                  OFFICIATING FOREPERSON


Presented by:

BILLY J. WILLIAMS
United States Attorney


SETH D. URAM, DC #376214
Assistant United States Attorney